## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| **JOSEPH H. HARMAN**, | : | Case No. **11-67522**-MHM |
| *Debtor.* | : | |
| | : | |
| | : | |
| **NEIL C. GORDON,** | : | |
| **Chapter 7 Trustee for the Estate of Joseph** | : | **ADVERSARY PROCEEDING** |
| **H. Harman**, | : | **No. 13 -05211-MHM** |
| | : | |
| *Plaintiff,* | : | |
| *v.* | : | |
| | : | |
| **JOSEPH H. HARMAN, individually and as** | : | |
| **Trustee of the Linda J. Harman Irrevocable** | : | |
| **Trust,** | : | |
| **LINDA J. HARMAN, individually and as** | : | |
| **Trustee of the Linda J. Harman Irrevocable** | : | |
| **Trust,** | : | |
| **THE LINDA J. HARMAN IRREVOCABLE** | : | |
| **TRUST,** | : | |
| **J.H.H. HOLDINGS CORPORATION,** | : | |
| **FIRST EQUITIES PARTNERS, INC.,** | : | |
| **FIRST EQUITIES PARTNERS II, INC.,** | : | |
| **FCGI ASSOCIATES, LLC,** | : | |
| **SMITH CONERLY, LLP,** | : | |
| **J. NEVIN SMITH,** | : | |
| **SHADRIX LANE, P.C.,** | : | |
| **and VARIOUS JOHN DOES,** | : | |
| *Defendants.* | | |

## TRUSTEE'S RESPONSE IN OPPOSITION TO DEFENDANTS LINDA J. HARMAN, LINDA J. HARMAN IRREVOCABLE TRUST, J.H.H. HOLDINGS CORPORATION, FIRST EQUITIES PARTNERS, INC., FIRST EQUITIES PARTNERS II, INC., AND FCGI ASSOCIATES, LLC'S MOTION TO DISMISS

Plaintiff Neil C. Gordon ("Trustee" or "Plaintiff") hereby submits his Response in Opposition to the *Motion to Dismiss First Amended Complaint for Failure to State Claim* (Docket No. 25) ("Motion to Dismiss," sometimes abbreviated "MTD") filed by Defendants Linda J. Harman ("Mrs. Harman"), The Linda J. Harman Irrevocable Trust (the "Trust"), J.H.H. Holdings Corporation ("JHH"), First Equities Partners, Inc. ("FEP"), First Equities Partners II, Inc. ("FEP II"), and FCGI Associates, LLC ("FCGI," together with Mrs. Harman, the Trust, JHH, FEP, and FEP II, are collectively, the "Defendants").

## INTRODUCTION

Trustee filed his *First Amended Complaint* (Docket No. 19) (the "First Amended Complaint," sometimes abbreviated herein as "Compl.") in this adversary proceeding on August 15, 2013. That pleading is seventy-seven pages long.  Fully forty-five of those pages are dedicated to factual allegations, and are supported by twenty exhibits. The First Amended Complaint describes a labyrinthine scheme of fraud built by Debtor over a period of years, through which Debtor has skillfully concealed assets from his creditors.  The mechanisms he has used include: (a) juggling the ownership of his companies when convenient through inconsistent corporate documents; (b) failing to schedule or otherwise disclose assets in bankruptcy; (c) manipulating or falsifying tax returns; (d) diverting assets into a Trust supposedly settled by his wife, but which in reality Debtor has funded and controls; and (e) channeling all income or assets to which he is entitled to his wife, or to the entities he owns and/or controls.  As a result, Debtor now stands before this Court with over $18 million in debt, while enjoying a lavish lifestyle and purporting to own virtually nothing.

Defendants move to dismiss the First Amended Complaint based on selective and mistaken readings of the law, as well as on the extraordinary assertion that it is factually

1

deficient. As will be shown below, Defendants' interpretation of the law is not only incorrect—even to the point of relying on bad law—but also incomplete in that it ignores key legal doctrines that fully endorse the availability of the relief sought on the facts pled.  As to the purported paucity of Trustee's factual allegations, this is not a simple case where Trustee is seeking to recover a couple of preferential transfers.  This is a case where Debtor has constructed a web of fraud for the express purpose of hiding his assets and income from creditors, making it impossible for Trustee to fully identify all his wrongdoing at the pleading stage. Notwithstanding that difficulty, Trustee's forty-five pages of factual allegations are more than adequate to meet applicable pleading standards. To dismiss this case now would merely give clever fraudsters a blueprint for how to avoid liability to their creditors.  For the reasons set forth below, the Motion to Dismiss should be denied in its entirety.

**FACTUAL BACKGROUND**

The First Amended Complaint is chock full of factual detail, and sets forth alternate theories for both legal and equitable relief, designed to ferret out Debtor's assets and income that he has hidden behind the Trust, JHH, FEP, FEPII, FCGI, or his wife.

## I.   THE TRUST

Turning first to the Trust, the First Amended Complaint asserts that the Trust is invalid and that all of the assets therein are subject to turnover (Compl. Counts I, II); that the Trust is the alter ego of Debtor, and is subject to veil-piercing (*id.* Count IX); and that Trustee is entitled to avoid and recover any and all fraudulent transfers that Debtor made into the Trust as far back as ten years prior to June 14, 2011 (the "Petition Date") (*id.* Counts III-VIII).

In support of these claims, Trustee alleges that the legal and equitable interests in Trust assets have merged in Debtor because he funded the Trust, exercises sole control over its assets,

and is empowered to distribute those assets to himself as, effectively, its sole beneficiary.  (*Id.* ¶¶ 15-16, 96-112). It also alleges that Debtor has chronically used the Trust as a vehicle to hide his assets and income from creditors, and has fraudulently diverted, or caused to be diverted into the Trust: (1) his monthly Social Security benefits (*id.* ¶¶ 121-123, and Ex. 6); (2) distributions to which Debtor is entitled as the 1% owner of FCGI (*id.* ¶¶ 115-120, 124-126); (3) monthly lease payments in the approximate amount of $1,950 (*id.* ¶¶ 127-137, and Ex. 7) ("Nextel Lease Payments"); and (4) compensation to Debtor for services he personally rendered to Stonemark Management LLC ("Stonemark Income") (*id.* ¶¶ 138-143.)  The First Amended Complaint also identifies the date and amount of twenty-seven other transfers, between August of 2008 and August of 2012, believed to have been made into the Trust's bank accounts by Debtor, or at his direction, for the purpose of defrauding his creditors.  (*Id.* p. 33-34). Most tellingly, Mrs. Harman has admitted that all the income and assets deposited into the Trust were generated through Debtor's efforts.  (*Id.* p. 25, n.8).

## II.    JHH, FEP, FEPII, and FCGI

The First Amended Complaint also sets forth ample factual detail to show that Debtor owned and controlled JHH, JHH's wholly owned subsidiaries FEP and FEPII, and FCGI (collectively, the "Entity Defendants"), and that he used the Entity Defendants as his mere instrumentalities and alter egos. Trustee has asserted claims against those entities for veil piercing (*id.* Count IX), declaratory judgment that Debtor is the true owner of JHH, FEP, and FEPII (*id.* Count X), avoidance and recovery of various fraudulent transfers (*id.* Counts IX, X, XVII, XVIII, XXI), and substantive consolidation of the assets of those entities into Debtor's estate (*id.* Count XIV.  In support of these claims, Trustee sets forth a twenty-year chronology of Debtor's inconsistent treatment of JHH, FEP, and FEPII, describing how Debtor purported to

"assign" certain proceeds from those entities to his wife for no consideration through a backdated

sham document (*id.* ¶¶ 65-70); how Debtor purported to transfer his scheduled 100% ownership

interest in JHH to his wife for no consideration in the midst of his last bankruptcy without court

approval (*Id.* ¶¶ 71-76); how Debtor nevertheless represented to the IRS in his federal tax returns

for the next nine years that Debtor himself was the sole owner of JHH (*id.* ¶¶ 77-82); and finally,

how after filing this bankruptcy case, Debtor conveniently changed his tax returns to represent

that Mrs. Harman owned JHH.  (*Id.* ¶¶ 83-88).

As to FCGI, the First Amended Complaint cites Debtor's representation to potential

investors that he controls FCGI and is its president, with Debtor owning 1% and the Trust

(which Debtor also controls) owning the other 99%.  (*Id.* ¶¶ 115-120).  As an asset of the Trust,

Debtor has used FCGI as a façade behind which to hide income for his personal services.  (*Id.* ¶¶

139-143).  In addition, Debtor has filtered his income through FCGI to his wife, so that it can be

used for Debtor's personal expenses without ever touching Debtor.  (*Id.* ¶¶ 41-44).

## III.   MRS. HARMAN

The First Amended Complaint also alleges with specificity how Debtor has used his wife

as a "straw man" behind which to divert and hide his money.  Against Mrs. Harman, Trustee has

asserted claims for avoidance and recovery of fraudulent transfers (*id.* Count XI, XII, XIII, XVII,

XVIII, XXI), declaratory judgment that assets in her name are *de facto* property of Debtor

(*id.* Count XV), turnover (*id.* Count XVI), and substantive consolidation (*id.* Count XIV).

In support of those claims, the First Amended Complaint alleges that Debtor hides certain

of his assets and income—including the Harmans' house and the family bank accounts—behind

his wife to keep them from creditors, but that Debtor nevertheless maintains complete control

over those assets by simply telling his wife what to do with them. (*Id.* ¶¶ 31-45).  Critically,

Mrs. Harman has admitted on the record that she has never refused Debtor's directions regarding how to dispose of property he has transferred to her.  (*Id.* ¶ 44).  She also admitted that all of the money she has deposited into the Trust, or into bank accounts nominally titled in her name, came from her husband, and were exclusively generated through his efforts. (*Id.* p. 25, n.8). Furthermore, even though Mrs. Harman holds title to the multi-million dollar house she shares with Debtor, Debtor generated the purchase money for the house, and has used it as collateral for his business dealings. (*Id.* ¶¶ 37-40.) These facts, and especially Mrs. Harman's admissions, strongly support an inference that Mrs. Harman is not the true owner of any of the assets Debtor channels to her, but merely an intermediary Debtor uses to hide assets from his creditors.

## IV.    BANKRUPTCY ISSUES

In addition, the First Amended Complaint alleges that Debtor has not been forthcoming in either this or his previous bankruptcy case, and has treated the Court with little regard. In both of his bankruptcy cases, Debtor failed to schedule certain property and purported to transfer his property in the midst of the bankruptcy proceeding without Court approval. In the first bankruptcy case, Debtor failed to schedule his interest in FEPII or FCGI, and misleadingly valued his interest in the Trust at zero. (*Id.* ¶¶ 47-51, 56).  In the midst of that case, Debtor also purported to transfer to his wife his entire interest in JHH—which was scheduled property— without court approval.  (*Id.* ¶¶ 72-74). Yet despite that transfer (which was *void ab initio*), Debtor nevertheless represented to the IRS in federal tax returns for the next nine years that he was the 100% owner of JHH, and its wholly owned subsidiaries FEP and FEPII. (*Id.* ¶¶ 77-82).

In this bankruptcy proceeding, Debtor has used the same tactics.  He failed to schedule any interest in JHH, FEP, or FEPII, backing away from his claim to the IRS that he owned those entities. (*Id.* ¶¶ 83-87). Furthermore, Debtor orchestrated the sale of certain of JHH, FEP, and

FEPII's interests without seeking court approval.  (*Id.* ¶¶ 89-95 and Ex. 5). Even worse, at his 341 meeting Debtor *admitted to engaging in fraudulent transfers* to avoid garnishment. (*Id.* ¶ 61). These facts support an inference that Debtor has no respect for the bankruptcy process, and that he has hidden and continues to hide his assets. In sum, the First Amended Complaint is replete with detailed facts showing that Debtor employed a number of vehicles to hinder, delay, and defraud his creditors. Discovery will likely uncover additional evidence of fraud.

**STANDARD OF REVIEW**

A motion to dismiss should only be granted "where it appears that the facts alleged fail to state a 'plausible' claim for relief." *Innotex Precision Ltd. v. Horei Image Products, Inc.*, 679 F.Supp.2d 1356, 1358 (N.D. Ga. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). In fact, "[a] complaint may survive a motion to dismiss for failure to state a claim [] even if it is 'improbable' that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely 'remote and unlikely.'" *Innotex Precision*, 679 F. Supp. 2d at 1358 (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007)).  All well-pled facts must be taken as true and construed in the light most favorable to the plaintiff. *See Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (*citing Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)). All reasonable inferences must be drawn in favor of the nonmoving party. *See King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).

**ARGUMENT AND CITATION OF AUTHORITY**

## I.    SUFFICIENCY OF FACTUAL ALLEGATIONS

Before addressing Defendants' legal challenges to Trustee's claims, we turn first to Defendants' oft-repeated accusation that the First Amended Complaint fails to meet the heightened pleading standard for fraud under Rule 9(b) because Trustee has failed to identify specific transfers into the Trust (MTD ¶ 21) and to sufficiently identify fraudulent transfers made

by Debtor within the applicable reach-back periods (MTD ¶¶ 51-52). In light of binding case law recognizing that the Rule 9(b) pleading standards should be relaxed for bankruptcy trustees, Defendants' argument must be rejected.

### A.  The pleading standards are relaxed for trustees in bankruptcy

Although Trustee has pled forty-five pages of factual allegations, he is aware that there may yet be much still to learn about Debtor's income and assets, primarily because Debtor himself has gone to such lengths to hide his assets and mask his affairs, and he is likely the only person who "knows it all." Recognizing the conundrum of pursuing a debtor who has fraudulently concealed his assets, the District Court for the Northern District of Georgia has relaxed the Rule 9(b) pleading requirement as applied to trustees in bankruptcy, and indeed, has even relaxed the requirement that a trustee plead essential elements of fraudulent transfer claims.

In *Kipperman v. Onex Corp.*, 2007 U.S. Dist. LEXIS 71551, (N.D. Ga., Sept. 26, 2007), the trustee of a liquidating litigation trust brought claims for fraudulent transfer, but failed to allege a specific date, amount, and description of each transfer.  Still, the district court refused to dismiss various fraudulent transfer claims, *id.* at *20-24, reasoning that, "[c]ourts generally take a liberal approach when reviewing allegations of fraud pled by a trustee in bankruptcy because, as an outside party to the transactions in issue, the trustee must plead the claim of fraud for the benefit of the estate and its creditors based upon secondhand knowledge." *Id.* at *23; *see also In re Reliance Fin. & Inv. Group, Inc.*, 2006 U.S. Dist. LEXIS 82945, *13 (S.D. Fla. Nov. 14, 2006) ("[W]hen the trustee of a bankruptcy estate brings [a] fraud claim . . . the trustee will inevitably lack knowledge regarding acts of fraud previously…"); *Profilet v. Cambridge Fin. Corp.*, 231 B.R. 373, 379 (S.D. Fla. 1999) ("…the Court agrees--that courts should relax the specificity requirements where the plaintiff is a trustee in bankruptcy").

Moreover, the court held that the trustee's "lack of personal knowledge is compounded with complicated issues and transactions which extend over lengthy periods of time, which require that this court grant him even greater latitude." *Kipperman*, 2007 U.S. Dist. LEXIS at \*24 (internal quotations and citations omitted). A pleading "satisfies the particularity requirement if the person charged with fraud will have a reasonable opportunity to answer the complaint and has adequate information to frame a response…or if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Tolz v. United States (In re Brandon Overseas, Inc.)*, 2010 Bankr. LEXIS 2326, at \*13-14 (Bankr. S.D. Fla. 2010) (quoting *Kapila v. Arnel (In re Arizen Homes, Inc.)*, 2009 Bankr. LEXIS 344, 2009 WL 393863, at \*2 (Bankr. S.D. Fla. Jan. 23, 2009) (quotations omitted)).[1]  The First Amended Complaint clearly satisfies this standard.

### B.  The First Amended Complaint is sufficiently pled

Defendants complain that Trustee fails to identify specific assets contributed to the Trust by Debtor (MTD ¶ 21) or any other fraudulent transfers (MTD ¶¶ 51-52). This is not true. The First Amended Complaint alleges that Debtor transferred, or caused to be transferred, into the Trust his social security income, the Stonemark Income, the Nextel Lease Payments, and Debtor's distributions from FCGI, along with twenty-seven other transfers made into the Trust within four years prior to the Petition Date.[2] (Compl. ¶¶ 115-137, 145, and Exs. 6 and 9). The First Amended Complaint also identifies several other fraudulent transfers to Mrs. Harman

---

[1]    *See also Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011)  (a trustee who has no access to the debtor's books or where books and records are "in shambles" should be allowed leniency in pleading transfers); *Official Committee of Unsecured Creditors of Fedders N. Am. Inc. v. Goldman Sachs Credit Partners (In re Fedders N. Am. Inc.)*, 405 B.R. 527, 544 (Bankr. D. Del. 2009)(a trustee may be subject to a more relaxed standard since the trustee is an outsider to a transaction whose knowledge comes second-hand).

[2]    Defendants' argument that these transfers were not transfers by Debtor of his property is addressed in Section II.A, *infra*.

and other defendants (Compl. ¶¶ 42-43, 152-196).  Under *Kipperman*, Trustee's inability to set forth the date, amount, and description of each and every specific fraudulent transfer at the pleading stage does not require dismissal. Instead, the forty-five pages of factual allegations and twenty supporting exhibits put Defendants on adequate notice of the alleged fraud and give them a chance to respond.  That is all that is required here.  Perhaps more importantly, regarding the alleged transfers into the Trust, Trustee has cited the *sworn deposition testimony* of Mrs. Harman that all the property contributed to the Trust was provided to her by Debtor and generated through his efforts (Compl.¶¶ 92-112 p. 25, n. 8).  Debtor has even represented that he settled the Trust. (*Id.* ¶¶ 100-101). Absent access to a complete accounting, it is difficult to imagine how Trustee could have pled more definitive allegations.

## II.    THE TRUST

Defendants also argue that 11 U.S.C. § 541(c)(2) provides a complete defense to all Trustee's claims against the Trust.  That provision states that a "restriction on the transfer of a beneficial interest of Debtor in a trust that is enforceable under non-bankruptcy law is enforceable in a case under this title."  Defendants' argument goes that because Georgia law recognizes certain spendthrift clauses, and because this Trust contains a spendthrift clause, all of the Trust assets are protected from Debtor's creditors as a matter of law, and cannot be collapsed into Debtor's estate.  (MTD ¶¶ 10-22).  This argument is wholly insufficient to meet the high standard for dismissal of a claim at the pleading stage. First, it fails to account for Georgia law that supports Trustee's claim that the *entire* Trust is invalid, because the legal and equitable interests in its assets have merged in Debtor. Thus, there is no need to even address the spendthrift clause.  Second, Debtor's absolute control of the Trust requires that the spendthrift provision be disregarded. Third, Georgia law does not enforce spendthrift clauses against a

beneficiary's creditors with respect to property contributed to a trust by that beneficiary. Thus, all property Debtor contributed to the Trust may be reached by his creditors.

### A. The Trust is invalid because legal and equitable interests have merged in Debtor

The Georgia Supreme Court has ruled that "where there is but a single trustee who is also the sole beneficiary, merger of legal and equitable interests results," and the trust is invalid. *Smith v. Francis*, 221 Ga. 260, 266 (1965). More recently, the Georgia Supreme Court has found that a spendthrift clause will not save a trust where the legal and equitable interests merge. In *Speed v. Speed*, 263 Ga. 166, 167 (1993), the court explained that the "invalidity of self-settled spendthrift trusts stems from the idea that no settlor…should be permitted to put his own assets in a trust, of which he is the sole beneficiary, and shield those assets with a spendthrift clause, because to do so is 'merely shift[ing] the settlor's assets from one pocket to another.'" (internal citations omitted) (alteration in original). The First Amended Complaint alleges plenty of facts to support the conclusion that the legal and equitable interests in the Trust have merged in Debtor, because he is *de facto* the settlor, sole trustee, and sole beneficiary.

#### 1. *Debtor is the true settlor of the Trust*

First, although the Trust Instrument facially identifies Mrs. Harman as the settlor (*see* Compl. Ex. 2, p. 1), both Mrs. Harman and Debtor have admitted or represented that Debtor is the true settlor of the Trust. Mrs. Harman testified under oath that the contributions to the Trust have all derived from Debtor's efforts:

> **Q**. So all the money that you invested were given to you directly or indirectly by your husband?
> **A**. Yes.
> **Q**. Okay. And that money came primarily from his efforts?
> **A.** Yes.
> **Q.** Now is your husband independently wealthy? Does he come from a --
> **A.** No.
> **Q.** -- wealthy background?
> **A.** No.

**Q**. So everything that he has, he's earned --
**A.** Yes.

(Compl. p. 25 n.8). From this testimony the Court may reasonably infer that all of the assets contributed to the Trust were actually Debtor's property and that he merely used his wife as an intermediary to attempt to evade the self-settling limitations placed on the Trust. Debtor has even represented to potential investors that he settled the Trust.  (*Id.* ¶ 100, 210).

Contrary to Defendants' implicit argument that the empty recitations in the Trust Instrument are controlling, the law permits bankruptcy courts to examine the substance of a trust to identify the real settlor of a trust.  For example, in *In re Bradley*, 501 F.3d 421, 426 (5th Cir. 2007), Debtor claimed that a trust which contained many of his assets was not self-settled because the trust instrument named his sister as settlor. The court, however, looked behind the trust instrument, and saw that the debtor contributed the majority of the assets to the trust, and his sister's contribution was nominal. *Id.* The court thus held that "debtor was a self-settlor," and the Fifth Circuit refused to disturb that ruling on appeal. *Id.* at 432-33. Similarly, Mrs. Harman has admitted that all the money in the Trust came from Debtor, and that she disposed of it in accordance with his directions. (Compl., p. 25 n 8, and ¶ 44).  As in *Bradley*, the Court may infer that Debtor is the true settlor of the Trust, and that Mrs. Harman is merely an intermediary.

2.  *Debtor is the sole trustee of the Trust*

Second, by the terms of the Trust Instrument itself, Debtor is the sole trustee of the Trust. While the first paragraph of the Trust Instrument purports to name Linda Harman as a co-trustee with Debtor, just a few pages later Mrs. Harman's trustee status is definitively eliminated:

> **Notwithstanding anything herein to the contrary, I [Linda Harman] shall never be permitted to serve as a Trustee or Co-Trustee hereunder**, and I shall not have any power, exercisable alone or in conjunction with any person, either (1) to designate the persons who shall possess or enjoy the trust

property or the income therefrom, or (2) to alter, amend, revoke or terminate any beneficial interest or right to enjoyment in the trust property.

(Compl. ¶ 103) (Emphasis added).  The Trust Instrument itself makes Debtor the sole trustee.

### 3. *Debtor is* de facto *the sole beneficiary of the Trust*

That Debtor is *de facto* the sole beneficiary of the Trust is not obvious if, as Defendants suggest, the Court should do no more than count the persons named as possible beneficiaries in the Trust Instrument. In addition to Debtor, Mrs. Harman is a named beneficiary during her life (*id.* Compl. Ex. 2, p. 1), and four other individuals are named as contingent, remainder beneficiaries upon the Harmans' deaths. (*Id.* p. 2.)  However, Georgia law rejects such a superficial analysis. Instead, it requires an inquiry into whether one beneficiary has the power to extinguish the interest of the other beneficiaries; if so, that person is deemed the sole beneficiary.

The Georgia Supreme Court recently addressed this issue in *Phillips v. Moore*, 286 Ga. 619, 620 (2010).  There, the District Court for the Southern District of Georgia certified to the Georgia Supreme Court the question of whether creditors could reach the assets of a spendthrift trust when Debtor settled the trust and multiple beneficiaries were named, but Debtor retained the power to dispose of trust assets. The court answered that question in the affirmative, reasoning that because Debtor retained the power to appoint all trust assets to himself, and thereby destroy the interest of the other named beneficiaries, functionally he was "the sole beneficiary of the trust and the spendthrift provision [wa]s unenforceable." *Id.*[3]

Here, Debtor has the same power to destroy the other beneficiaries' interests as did the

---

[3]    Defendants cite *Avera v. Avera*, 253 Ga. 16 (1984) for the proposition that a spendthrift trust is *per se* valid where it has multiple beneficiaries, even if one controls the trust. (MTD ¶ 16). But *Phillips* rejected that limited reading: "we note that, citing *Avera*, one commentator posits that Georgia takes the 'traditional' approach…that…where a trust agreement names beneficiaries, the settlor cannot be deemed the sole beneficiary even if he retains the power to destroy their interests…**we reject this assessment of *Avera*.**" *Id.* at 620. (Emphasis added).

debtor in *Phillips*. The Trust Instrument provides:  [T]he Trustee [Debtor] shall manage and invest the property comprising the Trust Estate…and shall pay such part of the net income and corpus of the trust **as the Trustee may deem proper** to provide for my [Mrs. Harman's] own maintenance and support and the maintenance and support of my husband, **taking account of other means of support available to them to the knowledge of the Trustee**." (Compl. ¶ 102, Ex. 2, p. 1) (Emphasis added). Thus, Debtor has the sole discretion to decide what to pay to himself and his wife; and, if he decides his wife has other means of support, he could in his sole discretion pay her nothing. Further, upon Mrs. Harman's death, Debtor has unfettered discretion as primary beneficiary to distribute to himself any of the trust income or corpus "in any amount or proportion in any year or years that Trustee deems appropriate without requirement of equalization from year to year." (*Id.* p. 2). In other words, Debtor may plunder the Trust without accountability, leaving nothing for the remainder beneficiaries. Under *Phillips*, and making all reasonable inferences in favor of Trustee, Debtor is *de facto* the sole beneficiary of the Trust.

In sum, Trustee has pled sufficient facts, and there is ample law, to support the theory that the entire Trust is invalid because legal and equitable title have merged with Debtor, and that its assets are property of Debtor's estate.  Therefore, the Motion to Dismiss must fail to the extent it seeks dismissal of Counts I and II of the First Amended Complaint.

### B.  Debtor's absolute control over the Trust invalidates the spendthrift provision

Citing *In re Meehan*, 102 F.3d 1209 (11th Cir. 1997), Defendants argue that Debtor's complete dominion over the Trust is irrelevant to determining whether the spendthrift provision should be enforced. However, *Meehan* is both factually and legally inapposite, because it did not involve allegations of fraud, or even address the rules invalidating self-settled trusts.

The Eleventh Circuit's decision in *In re Lawrence*, 279 F.3d 1294 (11th Cir. 2002) is on point. There, the court examined whether a spendthrift provision was enforceable in a bankruptcy case where Debtor purposely transferred property into the trust to evade creditors; in making that determination, debtor's control over the trust was pivotal. Even though Debtor in *Lawrence* was neither a trustee nor even a named beneficiary, *id.* at 1296, the Eleventh Circuit still affirmed the bankruptcy court's order for the turn-over of trust assets reasoning that,

> as settlor and prospective beneficiary, [debtor] **retained de facto control over the Trust** through his ability to appoint Trustees who could in their absolute discretion reinstate the appellant as a beneficiary and assign the entire proceeds to him**...[debtor] clearly established this Trust for his own benefit and to shelter these assets from an anticipated adverse…judgment**.

*Id.* at 1299. (Emphasis added).  *See also, In re Chambers*, 451 B.R. 621, 625 (Bankr. N.D. Ga. 2011); *In re Hipple,* 225 B.R. 808, 814 (Bankr. N.D. Ga. 1996)); *In re Phillips*, 411 B.R. 467, 471-72 (Bankr. S.D. Ga. 2008). Trustee's allegations in this case are even stronger than the facts in *Lawrence*. There, Debtor was not a trustee or even a named beneficiary, and was still found to have *de facto* control of the trust that required turnover of its assets.  Here, Debtor is the *de facto* settlor of the trust, a named beneficiary, *and* the **sole** trustee with exclusive discretion over the trust income and corpus.  In short, Trustee's turnover claim is well-founded in law.

> C.    **Georgia law will not enforce the spendthrift clause against Debtor's creditors with respect to assets Debtor contributed to the Trust**

Even assuming for the sake of argument that the Trust and its spendthrift provision were valid (and they are not), Defendants cannot use Section 541(c)(2) of the Bankruptcy Code to keep Debtor's contributions to the Trust out of the estate, because Georgia law allows Debtor's creditors to reach any property Debtor contributed to the Trust.  O.C.G.A. § 53-12-80(f) states, "[i]f a beneficiary is also a contributor to the trust, a spendthrift provision *shall not be valid* as to such beneficiary to the extent of the proportion of the trust property attributable to such

beneficiary's contribution." (Emphasis added). According to Mrs. Harman, and as alleged in the First Amended Complaint, all the assets and income in the Trust originated from Debtor, and Mrs. Harman deposited them into the Trust (which Debtor alone controls) at Debtor's direction. (Compl. ¶ 44, p. 25 n.8). These facts support a reasonable inference that the Trust was exclusively funded by Debtor, and thus all Trust property is reachable by his creditors under Georgia law. For these reasons, Trustee is entitled to pursue Counts I and II against the Trust.

## II.    FRAUDULENT TRANSFER CLAIMS

In an effort to address Debtor's evasive tactics and to include all possible avenues of recovery, Trustee has asserted claims against the Entity Defendants and the Trust for the legal remedy of fraudulent transfer (*see* Compl. Counts IV, VIII, XVII, XVIII, XXI). In addition to their Rule 9(b) arguments, Defendants argue that these claims should be dismissed because they do not allege a transfer of "an interest of Debtor in property," but only that the Trust or the Entity Defendants made various transfers. (MTD ¶¶ 41-48). Defendants also argue that Trustee's fraudulent transfer claim against the Trust under 11 U.S.C. § 548(e) (Compl. Count V) should be dismissed because the Trust is not self-settled.  (MTD ¶¶ 49-50).

Again, Defendants' arguments must be rejected. First, Trustee has adequately alleged a transfer by Debtor in Debtor's property by alleging that Debtor effectuated these transfers through entities which are his alter egos and which he owns and/or controls. Because Debtor has disregarded the form of these entities, the law authorizes the Court to do the same.  Second, Trustee's Section 548(e) claim against the Trust should not be dismissed because Debtor is the true settlor of the Trust, and even if he were not, Section 548(e) applies to a broad range of self-settled trusts *or similar devices*, and is therefore germane to the Trust here.

**A.**    **Transfers made through the Trust and the Entity Defendants, which are Debtor's alter egos, are an interest of Debtor in property**

Ironically, Defendants seek to avoid liability based upon the sophistication of Debtor's fraud. They argue that transfers of property nominally titled in the Entity Defendants, which Debtor owned and/or controlled, cannot be "transfers of an interest in property of Debtor," under "time honored principles of corporate separateness." (MTD ¶¶ 1, 42-48.) In other words, despite the overwhelming factual allegations that Debtor disregarded the corporate form and used the Entity Defendants as his mere instrumentalities (*see* Compl. ¶¶ 62-120), Defendants nevertheless ask the Court to strictly observe corporate formalities. This is contrary to law.

Georgia courts have long held that the corporate form can and should be disregarded when it has been abused for illegitimate purposes.[4] *See e.g.*, *Derbyshire v. United Builders Supplies, Inc.*, 194 Ga. App. 840, 844 (1990); *Bone Constr. Co. v. Lewis*, 148 Ga. App. 61, 63 (1978). If the corporate entity is a mere instrumentality for the owner's transactions, then honoring the corporate form would promote injustice and protect fraud. In that situation, Georgia law compels that the instrument's form—whether corporate or trust—be disregarded and that its assets be considered one and the same as the owner's.

Debtor's own conduct demonstrates that he viewed money that never came directly into his possession as his property. For example, on the eve of this bankruptcy, Debtor became personally entitled to receive $257,256 (the "NRV Funds") by virtue of his limited partnership interest in New River Valley Associates, Ltd.. (*Id.* ¶¶ 171-173). With the help of his counsel, Smith Conerly, and to avoid garnishment, Debtor arranged for those funds to be transferred to the law firm Shadrix Lane rather to one of his accounts. (*Id.* ¶ 174-183). Shadrix Lane

---

[4]    Property rights in bankruptcy are determined by state law. *Barnhill* v. *Johnson,* 503 U.S. 393, 398 (1992).

transferred $89,202.18 of the NRV Funds back to Smith Conerly shortly after receiving them, but post-petition, disbursed the balance of $168,053.87 to Trustee upon Debtor's direction. (*Id.* ¶¶ 190-193 and Exs. 18 and 19; *see also* Schedule B (Doc. No. 17 in Bankruptcy Case)). Debtor treated money that never actually came into his possession as his property. Trustee has a solid basis to allege that property diverted through the Trust and the Entity Defendants is an interest of Debtor in property, and to pursue relief on fraudulent transfer theories.

Moreover, the case law Defendants cite is inapposite. Neither *In re Miner*, 185 B.R. 362 (N.D. Fla. 1995), nor *In re Bernard Techs., Inc.*, 398 B.R. 526 (Bankr. D. Del. 2008), involved allegations that Debtors used corporate entities to perpetrate a massive fraud.  Instead, those cases stand for the limited proposition that, where a debtor properly observes the corporate form, the corporate assets are not collapsed into Debtor's estate. *See Miner*, 185 B.R. at 366 (refusing to collapse assets of a dissolved corporation into debtor's estate where the corporate form had not been abused); *see also Bernard*, 398 B.R. at 529 (refusing to pull corporate assets into Debtor's estate where "[t]he Trustee failed to offer any proof that [the subsidiary] transferred money which belonged or should have belonged to [Debtor].") In fact, *Bernard* supports Trustee's position by implicitly acknowledging that a transfer through a non-debtor entity could be considered a transfer by Debtor, if evidence were presented that the non-debtor transferred money that should have belonged to Debtor. *Id.* Accordingly, Defendants' argument is meritless.

### B. The fraudulent transfer claim against the Trust pursuant to Section 548(e) is sufficiently pled

In addition to the fraudulent transfer claims asserted under 11 U.S.C. §§ 544 and 548(a), Trustee also sued the Trust pursuant to 11 U.S.C. § 548(e) (Compl. Count V).  It states in part:

> In addition to any transfer that Trustee may otherwise avoid, Trustee may avoid any transfer of an interest of Debtor in property that was made on or within 10 years before the date of the filing of the petition, if— …**(A)** such transfer was

made to a **self-settled trust or similar device**…

11 U.S.C. § 548(e) (Emphasis added).

Defendants argue that Trustee cannot take advantage of the ten-year reach-back period of

Section 548(e) because the Trust is not "self-settled"—i.e., settled by Debtor.  (MTD ¶¶ 49-50)

As discussed in Section II.A.1, *supra*, Debtor is the real settlor of the Trust. But even if that were

not the case, Defendants have ignored that Section 548(e)(1) is not limited to self-settled trusts,

but may also be applied to "similar device[s]."  11 U.S.C. 548(e)(1)(A).  The phrase "similar

device" is meant to be construed "broadly so as to effectuate its aims…'even if crafty lawyers

draft devices not technically 'self-settled trust[s],' court[s] will have the power to scrutinize them

under the 'similar device' provision. *In re PorCo,* 447 B.R. 590, 595 (Bankr. S.D. Ill. 2011)

(quoting 5 COLLIER ON BANKRUPTCY ¶ 548.10[3][a] (15th ed. rev.)) (alterations in original).

Given the factual allegations regarding Debtor's funding of the Trust, and his use of the Trust as

a means to shield assets from creditors while maintaining control over those assets, Trustee has

adequately pled that the Trust is a "similar device" to a self-settling trust, and thus, the

Section 548(e) claim (and the extended 10-year reach-back period) should proceed.

**III.    VEIL PIERCING**

Defendants next argue that Trustee's alternate equitable claims for veil piercing against

the Trust and the Entity Defendants must be dismissed because the Trust is not subject to veil

piercing (MTD ¶¶ 24-26), and because Georgia law does not permit reverse veil piercing,

purportedly under any circumstances (MTD ¶¶ 27-30). Both arguments are incorrect.

**A.  The veil of the Trust can be pierced under appropriate circumstances**

Defendants argue that the Trust is not an entity whose veil can be pierced because a trust

is more in the nature of a contract than an entity. (MTD ¶¶ 24-25).  The only case Defendants

cite in support of that position is *In re Vebeliunas*, 252 B.R. 878 (Bankr. S.D.N.Y. 2000). That

case is bad law. The district court rejected on appeal the reasoning on which Defendants rely, holding that "the Bankruptcy Court's conclusion that the alter ego theory is inapplicable to the [trust] is incorrect as a matter of law." *In re Vebeliunas*, 01 Civ. 1108, 2002 U.S. Dist. LEXIS 1271, *13-14 (S.D.N.Y. Jan. 28, 2002). On a further appeal, the Second Circuit refused to reach the issue of whether a trust could be pierced, finding that the facts did not justify piercing. *In re Vebeliunas*, 332 F.3d 85, 91 (2003).  But as recently as 2012, a federal New York Court held that "there is no policy reason why veil piercing would apply only to corporations but not to trusts." *United States v. Everoff*, 00-cv-006029, 2012 U.S. Dist. LEXIS 60344, *46 (E.D.N.Y. Apr. 30, 2012). Courts nationwide have come to the same conclusion. *See, e.g., In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010); *Dexia Credit Local v. Rogan*, 629 F.3d 612, 623-24 (7th Cir. 2010); *In re Krause*, Case No. 08-1132, 2009 U.S. Dist. LEXIS 117490, at *5 (D. Kan. Dec. 16, 2009); *In re Maghazeh*, 310 B.R. 5, 19 (Bankr. E.D.N.Y. 2004); *In re Yerushalmi*, 487 B.R. 98, 109 (E.D.N.Y. 2012); *United States v. Hart*, No. 05-CV-1008, 2006 U.S. Dist. LEXIS 77137, at *9 (D. Ariz. Oct. 19, 2006). As Defendants cite no valid law for their contrary position, their request for dismissal of the veil piercing claim against the Trust should be denied.

### B. Reverse veil piercing is available if Trustee lacks an adequate remedy at law and may be available in the bankruptcy context

Defendants also argue that the veil piercing claim against the Entity Defendants must be dismissed because the Georgia Supreme Court's decision in *Acree v. McMahan*, 276 Ga. 880 (2003) precludes "reverse veil piercing" – i.e., reaching the assets of a corporate subsidiary to satisfy the debts of an individual owner/parent of the corporation, under any circumstances. However, a close reading of *Acree* and subsequent Georgia decisions make it clear that reverse veil piercing is only barred under Georgia law in the non-bankruptcy context in circumstances where other legal remedies are available. If, after discovery takes it course, Trustee is unable to

prevail on his fraudulent transfer claims, then Georgia law permits Trustee to seek equitable relief through reverse veil piercing. *See Acree v. McMahan*, 276 Ga. 880, 883 (2003) (acknowledging that reverse veil piercing "is appropriately granted only in the absence of adequate remedies at law"); *Carrier 411 Servs., Inc. v. Insight Tech., Inc.*, 744 S.E.2d 356 (Ga. App., June 11, 2013) (same); *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 292 (2005) (same, but also holding that a corporation may pierce its own veil in bankruptcy in part because alter ego claims are construed more broadly in bankruptcy). It remains to be seen which remedy—legal or equitable—is available here. Trustee's alternate plea for each form of relief is proper, and dismissal of either at this time would be premature.

## IV.   DECLARATORY JUDGMENT

Trustee has pled various counts for declaratory relief that assets nominally titled in the name of the Trust, the Entity Defendants, and Mrs. Harman are actually property of Debtor's bankruptcy estate because he exercises dominion and control over these assets and income. (Compl., Counts I, IX, X, XV). Defendants argue that these claims should be dismissed because: (i) they impermissibly seek declaratory judgment as to "past conduct;" (ii) they are duplicative of other relief sought; and (iii) no legal remedy exists for assets titled in Mrs. Harman's name to be "clawed" back into the estate.  (MTD ¶¶ 9, 39-40).  Each argument must be rejected.

### A.  The declaratory judgments that Trustee seeks will provide prospective relief

Defendants' argue that Trustee's requests for declaratory judgments regarding certain assets are based only on "past conduct."  Litigating by sound bite, Defendants have excerpted a few favorable passages generally stating that declaratory relief is inappropriate when it is sought only with regard to past conduct and will not provide prospective relief. (MTD, ¶¶ 7-8). Then, without any meaningful explanation, Defendants baldly state that the declaratory judgment claims here should be dismissed because they only concern past conduct. (*Id.* ¶¶ 9, 40.)

Respectfully, Trustee is hard pressed to understand how Defendants came to this conclusion. Trustee's requests for declaratory relief represent a live, ongoing, and actual controversy in which Trustee seeks a declaration that the Trust is invalid and whether certain assets held nominally by the Trust, the Entity Defendants, and/or Mrs. Harman are actually part of Debtor's estate. (Compl. ¶¶ 31-170). The resolution of these issues will *prospectively* determine what assets are available to satisfy creditors' claims. Thus, this case falls squarely within the purview of the Declaratory Judgment Act. *See* 28 U.S.C. § 2201(a). In fact, as recently as two weeks ago, the Eleventh Circuit entertained claims for declaratory judgment that certain property fell within the debtor's estate. *See, e.g., Fed. Deposit Ins. Corp. v. Zucker*, No. 12-13965, 2013 U.S. App. LEXIS 18774 (11th Cir. Sept. 10, 2013) (considering bankruptcy court's entry of declaratory relief on summary judgment that certain funds were property of debtor's estate, and reversing on grounds other than the scope of the Declaratory Judgment Act); *see also Funk v. LFLM Defendants*, 382 F.3d 1058, 1063-64 (10th Cir. 2004) (affirming declaratory judgment that certain property was part of debtor's estate).

Moreover, the present case is distinct from the cases that Defendants cite. For instance, in *Channel Master Corp. v. JFD Elecs. Corp.*, 263 F. Supp. 7 (E.D.N.Y. 1967) (MTD ¶ 8), the plaintiff filed a patent case, seeking to determine the invalidity of a patent based on its past actions, where there was no possibility of future infringement. Here, Trustee has alleged that Debtor's abuse are ongoing. (*See* Compl. ¶¶ 49-50, 110-111, 115-170, 223). The "past conduct" argument is meritless.

**B**. **The Declaratory Judgment Act expressly authorizes Trustee to seek declaratory judgment in conjunction with other forms of relief**

Incredibly, Defendants also argue that Trustee's claims for declaratory judgment should be dismissed because they are duplicative of other claims for relief. (MTD, ¶ 9). The plain

meaning of the Declaratory Judgment Act is directly to the contrary. 28 U.S.C. § 2201(a) states that declaratory relief may be entered "whether or not further relief is or could be sought." In other words, declaratory relief is not an exclusive remedy, and federal law permits Trustee to seek declaratory relief in conjunction with other types of relief. This concept was recognized in *Kirkman v. Wilmington Trust Co.,* 61 F. Supp, 651, 654-55 (D. Del. 1945), which Defendants even cited in the Motion to Dismiss. Defendants' contrary argument must be rejected.

### C. Trustee's claims for declaratory relief that assets nominally titled in Mrs. Harman's name, and that Debtor owns JHH's stock, are proper

Next, Defendants argue that Trustee's request for declaratory judgment is improper because there is no legal basis for the Harmans' house, the family bank accounts, and JHH's stock to be declared property of Debtor's estate. (MTD ¶¶ 38-40). This is incorrect. In bankruptcy, Debtor's absolute control over that property is enough to permit Trustee to recover it as an asset of the estate. *See In re IFS Fin. Corp.*, 669 F.3d 255 (5th Cir. 2012) ("regardless of legal title, [Debtor] had the ultimate power to transfer funds to others…That [debtor] obscured its power to transfer in an intentionally complicated corporate structure suggests that control is decisive, and that legal title is irrelevant."). Trustee has pled compelling facts to show that Debtor owned and controlled the property nominally titled in his wife's name. Again, Mrs. Harman admitted that all the property she put into the Trust was provided to her by Debtor and generated through his efforts, (Compl.¶¶ 92-112 p. 25, n. 8), and that she has never refused a direction from Debtor regarding the disposition of assets and income he transferred to her. (*Id.* ¶ 44). Further, while Mrs. Harman purportedly owns the Harmans' house, Debtor has used it as collateral for his business dealings. (*Id.* ¶¶ 37-40). Most tellingly, Debtor admitted to fraudulently transferring money to his wife to avoid garnishment. (*Id.* ¶ 61.) Accordingly, the Court may infer that Debtor is the true owner of the Harmans' house, bank accounts, and other

property nominally titled in his wife's name.

With respect to Debtor's interest in the stock of JHH, Trustee is not seeking to avoid the purported transfer of that stock.  Instead, Trustee has questioned not only the bona fides of any purported transfer of the JHH stock to Mrs. Harman, but whether such transaction ever properly took place. (Compl. ¶¶ 71-88). The fact that Debtor attempted to transfer his JHH stock to Mrs. Harman during his first bankruptcy case without even bothering to seek Court approval, then represented that he owned JHH in his federal tax returns for 9 years, and then failed to disclose any interest in JHH in his bankruptcy schedules, calls into question who actually owned the JHH stock as of the Petition Date. *In re Teschmacher & Mrazay,* 127 F. 728, 731 (E.D. Pa. 1904) (a bankruptcy court may "inquire summarily concerning the ownership of property alleged to belong to the bankrupt, although it be found in the possession or custody of a third person").  Thus, Trustee's claim for declaratory relief as to the JHH stock is proper.

## V.    SUBSTANTIVE CONSOLIDATION

Defendants also urge the Court to dismiss Trustee's claim for substantive consolidation of the estates of non-Debtors Mrs. Harman and the Entity Defendants with Debtor's estate. (*See* Compl. Count XIV; MTD, ¶¶ 31-36). Again, Defendants selectively focus on a few hand-picked cases, and ignore the large body of law authorizing the Court to grant the requested relief.

### A.  The Court is empowered to implement substantive consolidation

It is universally acknowledged that "…bankruptcy courts have the power to order substantive consolidation by virtue of their general equitable powers." *Eastgroup Properties*, 935 F.2d 245, 248 (11th Cir. 1991).  In the 1940s, "the Supreme Court gave its tacit approval to this equitable power to substantively consolidate two estates." *Reider v. Fed. Deposit Ins. Corp. (In re Reider)*, 31 F.3d 1102, 1005 (11th Cir. 1994). The case in which the Supreme Court gave its imprimatur to substantive consolidation involved the consolidation of the assets of a non-debtor

corporation dominated by the debtor. *See Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 218 (1941) (noting that the non-debtor entity whose assets were consolidated into the estate had no standing to insist on plenary proceedings because its affairs were "so closely assimilated to the affairs of the dominant stockholder [debtor] that in substance it is little more than his corporate pocket.")  Here, Trustee has alleged precisely this misuse of the corporate form to the detriment of Debtor's creditors. Substantive consolidation is appropriately sought at this time.

Moreover, substantive consolidation is hardly an outlandish remedy, even when applied to non-debtors. The majority of courts, including this one, have interpreted the bankruptcy courts' power of substantive consolidation to include the authority to substantively consolidate non-debtors in appropriate circumstances. *See e.g.*, *Bonham v. Compton (In re Bonham)*, 229 F.3d 750 (9th Cir. 2000) (reversing district court and ordering substantive consolidation of debtor's estate with nondebtor entities); *Matter of Munford, Inc.*, 115 B.R. 390, (Bankr. N.D. Ga. 1990) (substantively consolidating nondebtor's estate with debtor's) *In re S & G Fin. Servs. of S. Fla., Inc.*, 451 B.R. 573 (Bankr. S.D. Fla. 2011) (same); *In re Creditors Serv. Corp.*, 195 B.R. 680 (Bankr. S.D. Ohio 1996) (same); *In re United Stairs Corp.*, 176 B.R. 359 (Bankr. D. N.J. 1995) (same); *In re Crabtree*, 39 B.R. 718, (Bankr. E.D. Tenn. 1984) (same); *In re Alico Mining, Inc.*, 278 B.R. 586 (Bankr. M.D. Fla. 2002) (bankruptcy court has authority to substantively consolidate debtor with nondebtor entity). Trustee has cited ample authority entitling him to the relief sought based on all reasonable inferences that can be drawn from the facts pled. That is all that is necessary to defeat a motion to dismiss.

### B.  Trustee may pursue substantive consolidation concurrently with other remedies

Echoing their declaratory judgment arguments, Defendants urge the Court to dismiss the substantive consolidation claim on the basis that legal remedies, such as fraudulent transfer

claims, are also available to Trustee. (MTD ¶ 36.) But Defendants are again seeking dismissal of equitable remedies because legal remedies exist, but in the same breath requesting dismissal of all legal remedies based on technicalities. Trustee is entitled to alternately seek legal and equitable relief, and to test those theories through discovery.

## VI.    ACCOUNTING

Finally, Defendants argue that Trustee is not entitled to an accounting because Defendants do not owe him a fiduciary duty. (MTD ¶ 53.) None of Defendants' cases addresses whether a trustee in bankruptcy must plead a fiduciary duty to obtain an accounting. Instead, they address when civil litigants outside of bankruptcy may demand an accounting from an adverse party. But bankruptcy is fundamentally different than civil litigation because a trustee stands in the shoes of the debtor, *First Nat'l Bank & Tr. Co. in Macon v. Flatau* (*In re Wood*), 643 F.2d 188, 194 (5th Cir. 1980), and is responsible for overseeing the debtor's estate. The debtor is obligated to be honest and forthright with the Court and the trustee, and the trustee is not required to plead that he is owed a fiduciary duty to obtain an accounting related to Debtor's assets. Trustee is entitled to an accounting of Debtor's property to be fully informed as to the estate's assets—including an accounting from non-debtor entities, such as Defendants, that may hold property of Debtor's estate. *See Waldschmidt v. CBS, Inc.*, 14 B.R. 309, 314-15 (Bankr. M.D. Tenn. 1981) (ordering non-debtor defendant to account to trustee regarding property of debtor's estate in its possession). Dismissing the accounting claim is illogical because Defendants admit that Trustee may obtain this information in discovery. (MTD ¶ 53.)

### CONCLUSION

For all of the foregoing reasons, Trustee respectfully asks the Court to deny the Motion to Dismiss in its entirety, and grant Trustee any other relief that this Court deems just and proper.

Dated September 23, 2013   Respectfully submitted,

        ARNALL GOLDEN GREGORY LLP

            /s/
        _____
        Sean Kulka, Ga. Bar No. 648919
        Theresa Y. Kananen, Ga. Bar No. 478998
        171 17th Street, N.W., Suite 2100
        Atlanta, GA  30363
        Phone: (404) 873-8500
        sean.kulka@agg.com
        theresa.kananen@agg.com

        *Attorneys for Chapter 7 Trustee*
        *Neil C. Gordon*

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 23, 2013, the foregoing TRUSTEE'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS was electronically filed using the CM/ECF system, which will automatically notify the following counsel of record in this matter of the filing:

**J. Nevin Smith**
Smith Conerly LLP
402 Newnan Street
Carrollton, GA 30117
cstembridge@smithconerly.com
*Attorney for Debtor*

**Gary W. Marsh**
David E. Gordon
McKenna Long & Aldridge, LLP
One Peachtree Center
303 Peachtree Street, Suite 5300
Atlanta, GA 30308
gmarsh@mckennalong.com
dgordon@mckennalong.com
*Attorneys for Linda Harman, Linda J. Harman Irrevocable Trust, JHH Holdings Corporation, First Equities Partners, Inc., First Equities Partners II, Inc., FCGI Associates, LLC*

**Carl H. Anderson, Jr.**
Hawkins Parnell Thackston & Young, LLP
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308
canderson@hptylaw.com
*Attorney for Shadrix Lane, P.C.*

**Lydia M. Hilton**
Cushing, Morris, Armbruster & Montgomery
Suite 4500
191 Peachtree Street
Atlanta, GA 30303
lmh@cmamlaw.com
*Attorney for Carolyn T. McAfee*

ARNALL GOLDEN GREGORY LLP

_____/s/_____
Sean C. Kulka, Ga. Bar No. 648919
171 17th Street, N.W., Suite 2100
Atlanta, GA  30363
Phone: (404) 873-8500