UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| **JOSEPH H. HARMAN,** | : | Case No. **11-67522**-MHM |
| *Debtor.* | : | |
| | : | |
| | : | |
| **NEIL C. GORDON,** | : | **ADVERSARY PROCEEDING** |
| **Chapter 7 Trustee for the Estate of** | : | No. 13 -05211-MHM |
| **Joseph H. Harman,** | : | |
| | : | |
| *Plaintiff,* | : | |
| *v.* | : | |
| | : | |
| **JOSEPH H. HARMAN, individually and** | : | |
| **as Trustee of the Linda J. Harman** | : | |
| **Irrevocable Trust,** | : | |
| **LINDA J. HARMAN, individually and as** | : | |
| **Trustee of the Linda J. Harman** | : | |
| **Irrevocable Trust,** | : | |
| **THE LINDA J. HARMAN** | : | |
| **IRREVOCABLE TRUST,** | : | |
| **J.H.H. HOLDINGS CORPORATION,** | : | |
| **FIRST EQUITIES PARTNERS, INC.,** | : | |
| **FIRST EQUITIES PARTNERS II, INC.,** | : | |
| **FCGI ASSOCIATES, LLC,** | : | |
| **SMITH CONERLY, LLP,** | : | |
| **J. NEVIN SMITH,** | : | |
| **SHADRIX LANE, P.C.,** | : | |
| **and VARIOUS JOHN DOES,** | : | |
| *Defendants.* | | |

**TRUSTEE'S RESPONSE IN OPPOSITION TO
DEFENDANT J. NEVIN SMITH AND SMITH CONERLY, LLP'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

COMES NOW Plaintiff Neil C. Gordon, Trustee herein ("Trustee") and submits his response in opposition to Defendant J. Nevin Smith and Smith Conerly, LLP's (collectively, the "Smith Defendants") Motion for Judgment on the Pleadings (Docket No. 90).

## I.    INTRODUCTION

After a close brush with disqualification based on their concealment of Debtor's funds on the eve of bankruptcy, the Smith Defendants now move for judgment on the pleadings, asserting that Trustee cannot assert claims against them for conspiracy to commit fraudulent transfer or for punitive damages. The Smith Defendants also claim that the doctrine of *in pari delicto* bars Trustee from pursuing a conspiracy claim against them and Debtor. These arguments are founded on a misconstruction of the law and must be rejected. The Smith Defendants' motion rises and falls on the premise that Trustee may only step into the shoes of Debtor to assert claims expressly contemplated by the Bankruptcy Code. Extrapolating from there, the Smith Defendants argue that a conspiracy claim is not property of the estate; that any participation by Debtor in a conspiracy is imputed to Trustee, thereby triggering the defense of *in pari delicto*; and that the Bankruptcy Code does not expressly provide for punitive damages.

The Smith Defendants' arguments unravel, however, when consideration is given to the fact that Trustee is pursuing his conspiracy and punitive damages claims while standing in *creditors'* shoes pursuant to 11 U.S.C. § 544(a)—not in Debtor's shoes pursuant to 11 U.S.C. § 541. Indeed, Section 544(a) empowers Trustee to pursue any state law remedy generally available to a hypothetical judgment lien creditor. Further,

1

Georgia law recognizes a cause of action for conspiracy to commit fraudulent transfer, and that punitive damages may be awarded on such a claim. Thus, not only does Trustee have standing to pursue his conspiracy and punitive damages claims, but the fact that Trustee is not standing in Debtor's shoes also nullifies the Smith Defendants' *in pari delicto* defense.

The Smith Defendants' further argument that Counts III, IV, VIII, XVII, and XVIII of the Second Amended Complaint should be dismissed for failure to plead sufficient facts against them must also be rejected. These Counts are for avoidance and recovery of certain transfers of interests of Debtor in property. The Smith Defendants are correct that, due to the confidential nature of their relationship with Debtor, Trustee has not been able to uncover, without discovery, specific examples of their involvement in every transfer at issue. Nevertheless, under the relaxed pleading standard afforded to bankruptcy trustees, Trustee has alleged sufficient facts for these claims to go forward.

Specifically, Trustee has described a decades-long attorney-client relationship between Debtor and the Smith Defendants, that encompassed at least two highly suspect dispositions of Debtor's property—one unauthorized transfer of Debtor's stock during his first bankruptcy in 1999, and of course, the disposition of the NRV Funds here. Moreover, the Smith Defendants' own Answer establishes that they have knowledge of the facts underpinning Counts III, IV, VIII, XVII, and XVIII, as evidenced by their refusal to respond to the allegations, on the basis that the information they have is protected by attorney-client privilege. Thus, judgment on the pleadings is premature and

unwarranted. For these reasons, and as further discussed below, the Smith Defendants' motion for judgment on the pleadings should be denied.

## II.    FACTUAL BACKGROUND

Trustee initiated this adversary proceeding on June 13, 2013, and filed a First Amended Complaint on August 19, 2013.  (Docket Nos. 1, 19). The Complaint, as amended, alleges a complex scheme of fraud perpetrated by Debtor, with the willing cooperation of his wife, through which Debtor transferred all his property to his wife, the Linda J. Harman Irrevocable Trust (the "Trust"), or various alter ego entities to hide his assets from creditors, while maintaining dominion and control over them. (Docket No. 19, *passim*). The Complaint named the Smith Defendants, Debtor's long-time legal counsel, as Defendants, alleging that they conspired with Debtor to hide certain funds he was due to receive on the eve of bankruptcy (the "NRV Funds"), and also that the Smith Defendants represented Debtor in his previous bankruptcy filed in 1999, during which Debtor made an unauthorized post-petition transfer of property of the estate to his wife.

Accordingly, the First Amended Complaint asserted various claims against the Smith Defendants, including counts for turnover of estate property, including the NRV Funds (Count II); for conspiracy to commit fraudulent transfer (Count XXII); and for punitive damages (Count XXIII). Based on the Smith Defendants' long course of dealing with Debtor, and their apparent involvement and misconduct in his affairs, Trustee also asserted claims against them for avoidance and recovery of certain post-petition transfers of assets into the Trust (Counts III and IV); for recovery of pre-petition transfers into the

Trust (Count VIII); and for avoidance and recovery of post-petition transfers of assets nominally titled in Mrs. Harman's name (Counts XVII and XVIII).

The Smith Defendants answered the First Amended Complaint on October 7, 2013, refusing to respond to the majority of the allegations on the basis that the information they learned about the facts alleged was protected by attorney-client privilege. (*See* Docket No. 45, *passim*). All the other Defendants moved to dismiss, and discovery in this case was stayed pending the resolution of those motions.

In the meantime, Trustee moved to disqualify the Smith Defendants based on their assisting Debtor in hiding the NRV Funds just weeks before bankruptcy, and their failure to disclose their retention of $89,000 of those funds, which they received within ninety (90) days of filing the bankruptcy petition on Debtor's behalf. (Docket No. 39). After briefing, the Court held a hearing on the Motion to Disqualify on December 17, 2013, and at the request of the Smith Defendants, set a schedule for further briefing. However, just as their brief would have fallen due, the Smith Defendants amended Debtor's Statement of Financial Affairs (more than two and a half years after filing the petition), to disclose for the first time their receipt of even more of Debtor's money within ninety days of the petition date. (Main Bankruptcy Case, Docket No. 64). The Smith Defendants then withdrew from representing Debtor. (Docket No. 58).

On March 31, 2014, the Court denied all pending motions to dismiss. (Docket No. 62, 63). Trustee then moved for leave of Court and obtained permission to file a Second Amended Complaint, which asserted additional claims against the Smith Defendants for avoidance and recovery of the preferential transfers disclosed in the updated Statement of

4

Financial Affairs filed on February 19, 2014. (Docket No. 75, Counts XXV, XXVI).

The parties conducted their 26(f) conference and agreed on a joint discovery plan, which

the Court approved on June 23, 2014. (Docket No. 89). Notably, in answering the

Second Amended Complaint, the Smith Defendants again refused to respond to the

allegations regarding transfers of Debtor's property to his wife, or into the Trust, or

through his alter egos, claiming attorney-client privilege. (Docket No. 81, *passim*). The

Smith Defendants now move for judgment on the pleadings as to Counts III, IV, VIII,

XVII, XVIII, XXII, and XXIII. As explained below, this Motion for Judgment on the

Pleadings should be denied.

## III.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Trustee Has Standing to Assert the Conspiracy to Commit Fraudulent Transfer Claim Pursuant to 11 U.S.C. § 544(a).

The Smith Defendants' argument that Trustee lacks standing to pursue a state law

claim against them for conspiracy to commit a fraudulent transfer is premised on the

incorrect assumption that Trustee is claiming standing under 11 U.S.C. § 541.

Specifically, the Smith Defendants argue that Trustee has standing only to assert claims

belonging to Debtor, which are considered property of the bankruptcy estate. (Br. 8-9).

While it is true that a trustee steps into the debtor's shoes pursuant to Section 541 of the

Bankruptcy Code, a trustee is not limited to pursuing claims available to the debtor.

Rather, Section 544(a) of the Bankruptcy Code also empowers a trustee to step into the

shoes of a debtor's creditors and assert any cause of action that generally could be

pursued by a hypothetical judgment lien creditor—including causes of action under

applicable non-bankruptcy law, and in this case, state law.  Here, Trustee's standing to

sue the Smith Defendants for conspiracy to commit fraudulent transfer flows from his

derivative standing as a creditor under Section 544(a).  The Smith Defendants' standing

arguments are misplaced insofar as they are premised on any inapplicable limitations to

claims under Section 541 of the Bankruptcy Code.

> *1.    Section 544(a) authorizes Trustee to pursue state law claims generally
> available to any hypothetical judgment creditor against third parties.*

Section 544(a)(1) of the Bankruptcy Code—tellingly entitled "Trustee as lien

creditor and as successor to certain creditors and purchasers"—provides as follows:

> **(a) The trustee shall have**, as of the commencement of the case, and without
> regard to any knowledge of the trustee or of any creditor, **the rights and powers
> of, *or* may avoid any transfer of property** of the debtor or any obligation
> incurred by the debtor that is voidable by—
>
> > **(1) a creditor** that extends credit to the debtor at the time of the
> > commencement of the case, and that obtains, at such time and with respect
> > to such credit, a judicial lien on all property on which a creditor on a simple
> > contract could have obtained such a judicial lien, whether or not such a
> > creditor exists…

11 U.S.C. § 544(a)(1) (emphasis added).

Both the plain language of Section 544(a) and the case law interpreting that

provision support Trustee's standing to pursue a claim under Georgia law for conspiracy

to commit fraudulent transfer.  Section 544(a) of the Bankruptcy Code vests Trustee with

the "rights and powers" of creditors, *or* the ability to avoid certain transfers of property of

the debtor. The disjunctive language of this Bankruptcy Code section is critical.  By

vesting the Trustee with the rights and powers of creditors generally—separate and apart

from Trustee's avoidance powers (the right to avoid transfer and obligations)—Section

544(a) empowers Trustee to pursue *any* cause of action that could be generally pursued by a hypothetical judgment lien creditor, including causes of action arising under state law. *See Collins v. Kohlberg & Co. (In re Southwest Supermarkets, LLC)* 325 B.R. 417, 426 (Bankr. D. Ariz. 2005) (recognizing that Section 544(a) vests the trustee "with 'rights and powers' of such creditors expressly *in addition to* their avoidance actions...") (emphasis in original).

> As the Tenth Circuit explained,

> To understand the full import of § 544, one must first understand the power of a bankruptcy trustee to stand in the shoes of an [sic] hypothetical creditor of the debtor to effect a recovery from a third party. Simply stated, from the reservoir of equitable powers granted to the trustee to maximize the bankruptcy estate, Congress has fashioned a legal fiction. Not only is a trustee empowered to stand in the shoes of a debtor to set aside transfers to third parties, but the fiction permits the trustee also to assume the guise of a creditor with a judgment against the debtor. Under that guise, the trustee may invoke whatever remedies [sic] provided by state law to judgment lien creditors to satisfy judgments against the debtor.

*Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10th Cir. 1990).

Thus, having the ability to step into the shoes of debtor's creditors, Trustee is not limited to only the causes of action available to Debtor. *In re Southwest Supermarkets*, 325 B.R. at 426 (noting that trustee could pursue claims for breach of fiduciary duty pursuant to Section 544(a), "even though no such claims are assertable on behalf of the Debtor"). Rather, "the extent of the trustee's §544 rights is measured by the substantive law of the jurisdiction governing the property in question." *PM Denver, Inc. v. Porter (In re Porter McLeod, Inc.)*, 231 B.R. 786, 792 (D. Colo. 1999); *see also Abney v. Cox Enters., (In re Fulton Air Serv.)*, 777 F.2d 1521, 1523 (11th Cir. 1985) (acknowledging

that trustee's rights under Section 544 are to be determined under applicable state law);

*Koch Refining v. Farmers Union Cent. Exch.*, 831 F.2d 1339, 1348 (7th Cir. 1987) ("State

law governs the causes of action that can be asserted by a bankruptcy trustee and by

creditors"); *Alpine Bank v. Moreno (In re Moreno)*, 293 B.R. 777 (D. Colo. 2003)

(same). Thus, through the "creditor" standing created in Section 544(a), Trustee is free to

bring any claim, against any person or entity, generally available under state law to a

hypothetical judgment lien creditor.

> 2.    *The cases that the Smith Defendants cite are inapplicable to general claims that can be asserted by all creditors.*

The Smith Defendants rely on the Supreme Court's decision in *Caplin v. Marine*

*Midland Grace Trust Co. of New York*, 406 U.S. 416 (1972) and Eleventh Circuit's

decision in *E.F. Hutton & Co, Inc. v. Hadley*, 901 F.2d 979 (11th Cir. 1990) to support

their argument that a trustee may not bring a claim against a third party on behalf of a

debtor's creditors.  However, Trustee's claim in this case is distinguishable from the

claims at issue in *Caplin* and *E.F. Hutton* in a key respect.  As a result, those cases,

although correctly decided in their limited context, are inapplicable here.  In both *Caplin*

and *E.F. Hutton*, the trustee in bankruptcy was attempting to assert a claim that was

unique to a particular class of creditors, and not generally available to any creditor.  *See*

*Caplin*, 406 U.S. at 434 (holding that trustee lacked standing to assert cause of action that

was particular to a specific group of debenture holders); *see also E.F. Hutton*, 901 F.2d at

986 (holding that a bankruptcy trustee was barred from "asserting claims of a specific

group of [debtor's] customer creditors, who have paid in full for securities purchased by [debtor]").

By contrast, in this case, Trustee's claim for conspiracy to commit fraudulent transfer is a general claim that could be asserted by any hypothetical creditor of Debtor. The distinction between personal and general claims is significant. As the Fifth Circuit explained, when a trustee stands in the shoes of a debtor's creditors, the trustee may assert the general claims of creditors, but is precluded from asserting those creditor claims that are personal to a specific creditor. *In re Schimmelpenninck*, 183 F.3d 347, 359 (5th Cir. 1999). In other words, even if a claim "belongs to" the creditor, the trustee is the proper party to assert the claim, for the benefit of all creditors, provided the claim advances a generalized grievance. *Id.* Here, Trustee's claim of conspiracy to commit fraudulent transfer is not specific to any particular creditor of Debtor, and it does not concern any personal dealings between a specified creditor and Debtor. Rather, it seeks recovery based on the collusion of Debtor and the Smith Defendants to deprive *all* creditors of property of Debtor's estate. Thus, it is a general claim, and Trustee has standing to assert such claim pursuant to Section 544(a) of the Bankruptcy Code. *See Koch Refining*, 831 F.2d at 1349 (stating that a cause of action is a general one if it generates liability as to all creditors and does not concern personal dealings between any particular creditor and debtor).

In short, nothing in *Caplin* or *E.F. Hutton* prevents Trustee's pursuit of a general creditors' claim here. As the Seventh Circuit explained, "*Caplin* is not overruled and...there is no express statutory provision allowing a trustee to bring an action which

*certain* creditors, like debenture holders, have…[but] this does not affect a trustee's right to bring a general action on behalf of all creditors rather than a personal action on behalf of only some." *Koch Refining*, 831 F.2d at 1347-1348 n.11. The Eleventh Circuit even acknowledged the distinction between general and specific creditor claims in *E.F. Hutton*, 901 F.2d at 986 (citing *Koch Refining*, 831 F.2d at 1347-48 n.11). Thus, *Caplin* and *E.F. Hutton* do not place any limitation on Trustee's statutorily authorized ability to pursue claims generally available to any creditor.

**B.    The Doctrine of *In Pari Delicto* Does Not Apply to Claims Asserted Under Section 544(a) of the Bankruptcy Code**

Continuing on the mistaken premise that Trustee is asserting his claim for conspiracy to commit fraudulent transfer against Debtor and the Smith Defendants pursuant to Section 541, the Smith Defendants next argue that the doctrine of *in pari delicto* forecloses that claim altogether, because Debtor is named as part of the conspiracy, and Trustee has stepped into Debtor's shoes. Thus, the argument goes, Trustee himself has unclean hands and cannot pursue the conspiracy claim.

Of course, as discussed above, pursuant to Section 544(a), Trustee has stepped into *creditors'* shoes—not Debtor's. Consequently, there is no imputation of wrongdoing from Debtor to Trustee, and the doctrine of *in pari delicto* is inapplicable and does not bar Trustee's conspiracy to commit fraudulent transfer claim. *See Kipperman v. Onex Corp.*, 411 B.R. 805, 880-881 (N.D. Ga. 2009) (stating that a debtor's wrongdoing should not bar a trustee's claims asserted on behalf of creditors pursuant to Section 544) (citing *In re Davis*, 785 F.2d 926, 927 (11th Cir. 1986)); *see also Cohen v. Ernst & Young (In re*

*Friedman's, Inc.)*, 372 B.R. 530, 545 (S.D. Ga. 2007) (acknowledging the principle that a trustee bringing claims on behalf of creditors is not subject to defenses, such as *in pari delicto*, that could be raised against debtor); *In re Porter*, 231 B.R. at 794 (holding that the doctrine of *in pari delicto* applies "only to the trustee in his 'debtor' status, not as 'creditor'"); *In re Moreno*, 293 B.R. at 781-782 (holding that debtor's knowledge will not be imputed to trustee when trustee pursues claims under Section 544). Accordingly, the Smith Defendants' reliance is misplaced and they cannot find any comfort in *in pari delicto* as an affirmative defense here.

## C.   Georgia Law Recognizes a Claim for Conspiracy to Commit Fraudulent Transfer and Permits Punitive Damages on Such Claims

### 1.   *Georgia law recognizes a claim for conspiracy to commit fraudulent transfer*

As discussed above, Trustee's ability to pursue state law claims via Section 544(a) is coextensive with that of any hypothetical judgment lien creditor. *See In re Porter McLeod, Inc.*, 231 B.R. at 792; *In re Fulton Air Serv.*, 777 F.2d at 1523; *Koch*, 831 F.2d at 1348. Here, Trustee's claim for conspiracy to commit fraudulent transfer is one recognized by Georgia law, as stated in the case of *Miller v. Lomax*, 266 Ga. App. 93 (2004). In *Miller*, the plaintiffs alleged that one of the defendants received property in violation of Georgia law prohibiting fraudulent transfers, and that she conspired with the decedent to accomplish the fraudulent transfer. *Id.* at 102-103. The trial court granted summary judgment to the defendants on the civil conspiracy claim, but the Georgia Court of Appeals reversed, reasoning as follows:

Based on the evidence discussed above, we find that a trier of fact could conclude that [the defendant] participated with [the decedent] in a scheme to effect fraudulent transfers, and so the...plaintiffs have shown a question of material fact as to [defendant's] liability for civil conspiracy.

*Id.* at 103.

The court then held that, due to the inherently secretive nature of conspiracy, fact-finding should be entrusted to a jury and summary judgment was inappropriate on that claim. *Id.*

Drawing on *Miller*, the Eleventh Circuit has also acknowledged that Georgia law permits a creditor to pursue a claim for conspiracy to commit fraudulent transfer against *anyone* involved in the scheme to accomplish the fraudulent transfer. *See Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1090 (11th Cir. 2004). In *Chepstow*, the Eleventh Circuit reversed the dismissal of the plaintiff's claim for conspiracy to commit a fraudulent transfer, holding that plaintiff's claim that defendant "took part in a conspiracy to violate [plaintiff's] rights under § 18-2-22 [Georgia's old fraudulent transfer statute] does state a claim under Georgia law." The Eleventh Circuit went even further, expanding the court's decision in *Miller*, stating that Georgia law permits conspiracy claims against even non-transferee defendants, as long as they conspired with debtor to defraud the creditor by hindering its collections of an outstanding debt. *Id.* Because Georgia law affords creditors a cause of action for conspiracy to commit fraudulent transfer, a bankruptcy trustee standing in the shoes of a hypothetical lien creditor is therefore authorized to assert that claim pursuant to Section 544(a) of the Bankruptcy Code.

The Smith Defendants cite *Sherman v. FSC Realty LLC, (In re Brentwood-Lexford Partners, LLC)*, 292 B.R. 255, 275 (N.D. Tex. 2003) and *Industrial Enterprises*

*of American, Inc. v. Mazzuto (In re Pitt Penn Holding Co.)*, 484 B.R. 25, 48 (D. Del. 2012) for the contrary proposition that, because the Bankruptcy Code does not expressly authorize a trustee to assert state law claims for conspiracy to commit a fraudulent transfer, trustees are barred from doing so, in part because such claims could expand the remedies contemplated by 11 U.S.C. § 550.   Respectfully, these decisions should be rejected.   Not only are they non-binding, but moreover, they fail to account for the plain (and expansive) language of Section 544(a) of the Bankruptcy Code.

Again, Section 544(a) vests trustees with more than just the avoidance powers (the power to avoid transfers and obligations) discussed in these decisions.   Notably, *In re Brentwood* is distinguishable from this case because the trustee there was proceeding under Section 544(b), which speaks only of a trustee's avoidance powers.   Section 544(a), on the other hand, confers on bankruptcy trustees the "rights and powers" enjoyed by judgment lien creditors proceeding under state law; this is separate from and in addition to the trustee's avoidance powers. 11 U.S.C. § 544(a)(1).   Consequently, under a plain reading of Section 544, and contrary to the Smith Defendants' precedent, a trustee proceeding under Section 544(a) is not limited to causes of action contemplated by the Bankruptcy Code.   Rather, he or she may take advantage of the full range of state law remedies available to the hypothetical judgment lien creditor.   *See In re Porter McLeod, Inc.*, 231 B.R. at 792; *In re Fulton Air Serv.)*, 777 F.2d at 1523 (11th Cir. 1985); *Koch*, 831 F.2d at 1348.   In this case, Section 544(a) authorizes Trustee to pursue a claim for conspiracy to commit fraudulent transfer under Georgia law.   *See Miller,* 266 Ga. App. at 103; *Chepstow*, 381 F.3d at 1090.   Accordingly, Trustee has correctly pled his claim for

conspiracy to commit fraudulent transfer against the Smith Defendants under Georgia law.

> 2.     *Punitive damages are recoverable on a claim for conspiracy to commit fraudulent transfer.*

Just as Trustee is authorized to pursue a conspiracy claim under Georgia law, he is also empowered to seek the corresponding state law remedy of punitive damages. Georgia law permits the recovery of punitive damages "in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1. A conspiracy claim sounds in tort, *see S. Rwy. Co. v. Lawson*, 174 Ga. App. 101, 104 (1985), so a claim for punitive damages is properly pled here.

The Smith Defendants, however, contend that Trustee cannot recover punitive damages because Section 550 of the Bankruptcy Code limits Trustee's relief to either a return of the transferred property or its value. 11 U.S.C. § 550. However, the limitations of Section 550 apply only to the recovery of transfers actually *avoided* under specified sections of the Bankruptcy Code. *Id.* Here, Trustee's assertion of a claim for conspiracy to commit fraudulent transfer is not an exercise of his avoidance power. Instead, Trustee is standing in the shoes of creditors generally under Section 544(a)(1), and is pursuing a state law remedy that is a by-product of that claim. Simply put, Section 550's limitation on the recovery of avoided transfers has no impact on Trustee's right (standing in the

shoes of a hypothetical judgment lien creditor) to recover damages available to creditors generally under state law on a tort claim for civil conspiracy.

In that regard, bankruptcy courts have permitted trustees to pursue claims for punitive damages in similar contexts. For example, in *Williams v. Lott (In re Lott)*, 2008 Bankr. LEXIS 4813, at *30-*34 (Bankr. W.D. Ark. Sept. 23, 2008), the Chapter 7 trustee asserted a state law claim for conversion against the debtor, based on certain unauthorized post-petition transfers, and a corresponding claim for punitive damages. The court found the debtor liable for conversion, and went on to entertain the trustee's claim for punitive damages, noting that Arkansas law permitted punitive damages upon a showing of malice. *Id.* at *33-*34. Ultimately, the court denied the trustee's punitive damage claim, but only because the evidence did not show the requisite ill intent to warrant the imposition of punitive damages. *Id.* at * 35.

Similarly, in *Anderson v. Mega Lift Sys., LLC, (In re Mega Systems, LLC)* 2007 Bankr. LEXIS 1957, at *1-*2 (Bankr. E.D. Tex. June 4, 2007), a Chapter 7 trustee asserted claims under the Bankruptcy Code and Texas law to avoid transfers of a debtor's property, and to recover punitive damages. In addressing the claim for punitive damages, the court acknowledged the absence of any specific provision of the Bankruptcy Code that would allow for exemplary damages. *Id.* at *2. Nevertheless, the court concluded that a "bankruptcy court may rely on state law to award exemplary damages where the Code does not specifically allow such measures." *Id.* at *27 (citing *Smith v. Lounsbury (In re Amberjack Interests, Inc.)*, 326 B.R. 379, 392 (Bankr. S.D. Tex. 2005)). As in *Lott,* the court in *Mega Lift* denied the request for punitive damages, but only because the

6509811                                    15

trustee failed to make the showing of malice required by Texas law. *Id.* Thus, in both cases, the bankruptcy courts accepted that a trustee could recover punitive damages under applicable state law, but denied the recovery of punitive claims based purely on a failure of evidence to justify such recovery.

Here, Trustee has stated a valid claim for punitive damages under Georgia law under O.C.G.A. § 51-12-5.1, and should be allowed to develop this claim through discovery. Certainly, the Smith Defendants' failure to explain why they assisted Debtor in stashing the NRV Funds in Shadrix Lane's trust account just a few weeks before Debtor filed bankruptcy, and at a time when both Debtor and Smith Conerly were subject to garnishment proceedings, raises the specter of the willfulness and bad faith that would support an award of punitive damages.

**D.    Counts III, IV, VIII, XVII and XVIII Should Not Be Dismissed Against the Smith Defendants.**

The Smith Defendants have also argued that the following Counts of the Second Amended Complaint should be dismissed as to them: (a) Counts III and IV for avoidance and recovery, respectively, of post-petition transfers of assets into the Trust; (b) Count VIII for recovery of pre-petition transfers into the Trust; and (c) Counts XVII and XVIII, for avoidance and recovery, respectively, of post-petition transfers of assets nominally titled in Mrs. Harman's name. The Smith Defendants contend that dismissal of these claims is warranted because Trustee does not specifically allege their involvement in transfers of Mrs. Harman's property or transfers into and out of the Trust.

The Smith Defendants' motion for judgment on the pleadings as to Counts III, IV, VIII, XVII, and XVIII should be denied for several reasons. First, the Smith Defendants' argument regarding the specificity of the pleadings retreads old ground. Other Defendants in this case already challenged the sufficiency of the pleadings through motions to dismiss, and the Court denied those motions. Regarding challenges to Counts III and IV, the Court stated: "[G]iven the pattern of conduct alleged in the Complaint, Trustee's allegations 'raise a reasonable expectation' that discovery may reveal transfers from the Trust to other Defendants." *Gordon v. Harman (In re Harman)*, 2014 Bankr. LEXIS 1592 at *53-*54 (Bankr. N.D. Ga. Mar. 31, 2014). The Court reiterated the same reasoning with respect to Counts VIII, XVII, and XVIII. *Id.* at *57, *64-*65. The Smith Defendants' Motion for Judgment on the Pleadings presents the same arguments the Court already rejected. Just as the Court denied the Motions to Dismiss, the Motion for Judgment on the Pleadings should likewise be denied.

Second, and relatedly, while the Smith Defendants are correct that the Second Amended Complaint does not specify their particular involvement in the transfers alleged in Counts III, IV, VIII, XVII, and XVIII, Trustee does set forth sufficient allegations to permit these claims to proceed. For example, Trustee alleges the Smith Defendants had a long-standing attorney-client relationship with Debtor, and represented him not only in this bankruptcy case, but also in a prior bankruptcy case, during which Debtor is alleged to have improperly transferred certain property to his wife post-petition without obtaining court approval. (Docket No. 75, ¶¶ 27, 46-56). Trustee has also alleged that the Smith Defendants facilitated the fraudulent transfer of Debtor's NRV Funds just weeks before

Debtor filed bankruptcy for a second time; that they later retained over $89,000 of the NRV Funds for themselves, without disclosing that transfer in Debtor's Statement of Financial Affairs; and that they concealed until February 19, 2014—more than two and a half years after initiating this bankruptcy case on behalf of Debtor—their receipt of at least an additional $20,421.82 of Debtor's property within ninety (90) days of the petition date. (*Id.* ¶¶ 171-200). Because of the secret nature of the Smith Defendants' relationship with Debtor, it has been almost impossible for Trustee to allege, without discovery, specific facts regarding each individual transfer in which the Smith Defendants might have been involved. Nevertheless, Trustee has alleged a long-standing relationship between Debtor and the Smith Defendants characterized by less-than-forthcoming conduct. Having survived the myriad motions to dismiss pending the opportunity for discovery, Trustee should not now be deprived of that opportunity via a motion for judgment on the pleadings.[1]

The third and perhaps most compelling reason that the disputed Counts should go forward is imbedded in the Smith Defendants' Answer to the Second Amended Complaint. Trustee alleges in detail that Debtor engaged in fraud by transferring all of his property to his wife or the Trust to evade recovery by his creditors, while continuing to exercise dominion and control over the transferred property. In response to a vast number of these allegations, the Smith Defendants refused to either admit or deny their

---

[1] Despite the long pendency of this case, Defendants' various motions to dismiss stayed the opening of discovery, and those motions were not resolved until March 31, 2014. The parties recently conducted their Rule 26(f) conference, and the Court just approved the parties' proposed discovery schedule earlier this week, on June 23, 2014. (Docket No. 91).

truth, claiming that the information they have regarding the alleged facts—including those associated with Counts III, VIII, XVII and XVIII—is protected from disclosure by the attorney-client privilege.  (*See, e.g.,* Second Amended Complaint and Answer of Smith Defendants, Docket Nos. 75, 81, at ¶¶ 34-36, 40-45, 54, 62, 79, 82, 84-86, 90-95, 97-101, 107-109, 114-119, 122, 124-133, 135-137, 139-141, 145-147, 150, 151, 154-155, 160-170, 172-174, 177, 179-181, 201-206, 210, 212, 220, 222-223, 229-230, 252-253, 257-258, 263-265, 267-268, 271-272, 284, 286-287, 291-292, 296-297, 302, 311-315, 321-322, 327, 339).  Thus, on the face of their own Answer, the Smith Defendants admit that their knowledge of Debtor's financial dealings goes well beyond the disposition of the NRV Funds and likely implicates several other transfers.  Trustee should be permitted the opportunity to test the extent of the Smith Defendants' knowledge through discovery.

E.    **The Court Has Jurisdiction to Resolve This Motion**

The Smith Defendants also assert that under the Supreme Court's decision in *Stern v. Marshall*, this Court lacks the constitutional authority to enter a final judgment on the Trustee's conspiracy to commit fraudulent claim.  (Br. 20-21).  From that conclusion, the Smith Defendants then make an unsubstantiated and exponential leap that this Court "should submit proposed findings of fact and conclusions of law on this claim to the district court with respect to ***any*** dispositive motion." (Br. 21-22) (emphasis added).  The Trustee concedes that this Court may lack constitutional authority to render final findings of fact and conclusions of law with respect to the civil conspiracy claim, and therefore, finally adjudicate the merits of that claim.  However, that issue is not before the Court on the Motion for Judgment on the Pleadings.

To the extent the Smith Defendants assert that *Stern v. Marshall* precludes this Court from deciding "any dispositive motion" involving the conspiracy claim, the Smith Defendants are incorrect. In *Stern v. Marshall*, the Supreme Court held that a bankruptcy court, as a non-Article III tribunal, could not constitutionally enter a final judgment on an inherently common-law counterclaim that would not be resolved in the claims adjudication process, regardless of the language of 28 U.S.C. § 157(b). 131 S.Ct, 2594, 2620 (2011). *Stern* prevents bankruptcy courts from issuing final adjudications in matters that are within the exclusive authority of Article III courts. *See West v. Avery (In re Noram Res., Inc.)*, 2011 Bankr. LEXIS 4268, at \*5 (Bankr. S.D. Tex. Nov. 7, 2011) ("The Court may, however, issue interlocutory orders, even in proceedings in which the Court does not have authority to issue a final judgment.").

However, not all dispositive motions require a final judgment, including the Smith Defendants' Motion for Judgment on the Pleadings. The Smith Defendants are not requesting that the Court adjudicate the merits of the Trustee's conspiracy claim; rather, the Smith Defendants are seeking a determination that the Trustee's Second Amended Complaint, on its face, is legally insufficient to entitle him to a judgment on his conspiracy count. That determination does not require a final judgment on the merits and, therefore, does ***not*** implicate the constitutional limitations recognized in *Stern v. Marshall. See e.g., West v. Avery*, 2011 Bankr. LEXIS at \*8-9 (holding that the bankruptcy court had the authority to decide a motion to dismiss because deciding such a motion is not affected by the constitutional limitations on the court's authority to enter final judgments); *see also In re Wash. Mut., Inc.*, 461 B.R. 200, 216 (Bankr. D. Del.

6509811

20

2011) *vacated in part* 2012 Bankr. LEXIS 895, 2012 WL 1563880 (Bankr. D.Del. Feb. 23, 2012) (holding that the bankruptcy court had constitutional authority to approve a settlement of claims that it may not have had constitutional authority to finally adjudicate based, in part, on the fundamental difference between approving a settlement of claims and ruling on the merits of those claims).  Accordingly, regardless of whether this Court has constitutional authority to enter a final judgment on the merits on Trustee's conspiracy to commit fraudulent transfer claim, contrary to the Smith Defendants' statements, this Court *has* the constitutional authority to decide the Smith Defendants' Motion for Judgment on the Pleadings, and is not in any away relegated to making recommendations to the District Court on that motion.

## IV.   CONCLUSION

For the foregoing reasons, the Smith Defendants' Motion for Judgment on the Pleadings should be denied.

DATED June 26, 2014                    Respectfully submitted,

                                       ARNALL GOLDEN GREGORY LLP

                                       */s/ Sean C. Kulka*
                                       Richard A. Mitchell, Ga. Bar No. 513419
                                       Sean C. Kulka, Ga. Bar No. 648919
                                       Theresa Y. Kananen, Ga. Bar No. 478998
                                       171 17th Street, N.W., Suite 2100
                                       Atlanta, GA  30363
                                       Phone: (404) 873-8500
                                       richard.mitchell@agg.com
                                       sean.kulka@agg.com
                                       theresa.kananen@agg.com

                                       *Attorneys for Chapter 7 Trustee*
                                       *Neil C. Gordon*

6509811                          21

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 26, 2014, the foregoing TRUSTEE'S RESPONSE TO DEFENDANTS J. NEVIN SMITH AND SMITH CONERLY, LLP'S MOTION FOR JUDGMENT ON THE PLEADINGS was electronically filed using the CM/ECF system, which will automatically notify the following counsel of record in this matter of the filing:

**James L. Paul**
**Drew Greene**
Chamberlain, Hrdlicka, White, Williams & Aughtry
191 Peachtree Street NE, 34th Floor
Atlanta, GA 30303
james.paul@chamberlainlaw.com
drew.greene@chamberlainlaw.com
*Attorneys for Debtor*

**Johannes Kingma**
**John Bunyan**
Carlock Copeland & Stair
One Ninety One Peachtree Tower
191 Peachtree Street NE, Suite 3600
Atlanta, Georgia 30303
jkingma@carlockcopeland.com
jbunyan@carlockcopeland.com
*Attorneys for J. Nevin Smith and Smith Conerly*

**Gary W. Marsh**
**David E. Gordon**
McKenna Long & Aldridge, LLP
One Peachtree Center
303 Peachtree Street, Suite 5300
Atlanta, GA 30308
gmarsh@mckennalong.com
dgordon@mckennalong.com
*Attorneys for Linda Harman, Linda J. Harman Irrevocable Trust, JHH Holdings Corporation, First Equities Partners, Inc., First Equities Partners II, Inc., FCGI Associates, LLC*

**Carl H. Anderson, Jr.**
**Jackson A. Dial**
Hawkins Parnell Thackston & Young, LLP
4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308
canderson@hptylaw.com
jdial@hptylaw.com
*Attorneys for Shadrix Lane, P.C.*

**Lydia M. Hilton**
Cushing, Morris, Armbruster & Montgomery
Suite 4500
191 Peachtree Street
Atlanta, GA 30303
lmh@cmamlaw.com
*Attorney for Carolyn T. McAfee*

ARNALL GOLDEN GREGORY LLP
*/s/ Sean C. Kulka*
Sean C. Kulka, Ga. Bar No. 648919
171 17th Street, N.W., Suite 2100
Atlanta, GA 30363
Phone: (404) 873-8500

6509811

22